FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 22 PM 4:02

M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>SHANNON K. BROWN,<br><br>    Defendant. | Case No. A03-0159 CR (JKS)<br><br>**SHANNON K. BROWN'S POST-SENTENCING MEMORANDUM** |

**I.    INTRODUCTION**

   Ms. Brown submits the following post-sentencing memorandum in response to this court's order at Docket No. 54.  Ms. Brown asks that this court vacate her sentence and conduct a new sentencing hearing in accordance with the principles set forth in United States v. Booker, 125 S. Ct. 738 (2005).  At the new sentencing hearing, Ms. Brown will be asking that the court impose a sentence of straight probation.

**II.    BACKGROUND**

   Shannon Brown pleaded guilty to a single count information charging her with theft by an insurance company employee in violation of 18 U.S.C. § 1033(b).



A.   **The Sentence**

At the sentencing hearing, the parties agreed that Ms. Brown's Sentencing Guidelines adjusted offense level was 10 and that her criminal history score was 0, placing her in a sentencing range of 6 to 12 months, Zone B. On June 4, 2004, this court imposed a sentence of 5 years probation with the special condition that Ms. Brown serve 6 months of home confinement, restitution in the amount of $56,615.32, and a special assessment of $100. Since the time of sentencing, Ms. Brown has successfully complied with all her conditions of supervision and has faithfully made her restitution payments as scheduled by the probation office, routinely paying more than the required amount. The special condition of home confinement has been stayed pending the outcome of these proceedings.

B.   **The Appeal**

Following her sentencing, Ms. Brown filed a timely appeal of her sentence to the United States Court of Appeals for the Ninth Circuit. That court remanded the matter, consistent with United States v. Ameline, 409 F.3d 1071, 1078 (9th Cir. 2005) en banc, to resolve Ms. Brown's plain error claim under United States v. Booker, 125 S. Ct. 738, 769 (2005).

C.   **This Court's Order at Docket No. 95**

At Docker No. 54, this court invited simultaneous post-sentencing memoranda from the parties addressing three questions:

>   (1)   Is there anything about the facts of Ms. Brown's case that make Booker/Fanfan and the earlier Blakely decision inapplicable to this case?

(2) Assuming the answer to question (1) is no, then to what extent and under what circumstances does Booker/Fanfan authorize a district court to impose a sentence that varies from the otherwise applicable Guideline sentence?

(3) If the facts and circumstances of Ms. Brown's case would allow this court discretion to deviate from the Guideline sentence, should the court exercise that discretion to vacate the judgment, hold a further sentencing hearing, and modify the sentence?

This memorandum represents Ms. Brown's responses to the court's three questions.

### III. MS. BROWN'S RESPONSE TO THE COURT'S ORDER AT DOCKET NO. 95

**A. The Principles Announced in United States v. Booker and Blakely v. Washington Are Directly Applicable to Ms. Brown's Sentencing**

The principles announced in United States v. Booker and in Blakely v. Washington are fully applicable to the sentence imposed in Ms. Brown's case. There is nothing about the facts of Ms. Brown's situation that would render these cases inapplicable to this sentence. The court imposed the least restrictive sentence under the then mandatory Sentencing Guidelines. Other than the restrictions placed on the court by the Guidelines, no mandatory minimums applied.

B.  **Post-<u>Booker</u> Sentencing Requires the Court in Every Case to Strike a Careful Balance Between the Competing Factors Identified by Congress in 18 U.S.C. § 3553(a) — The Guidelines Represent an Important Factor in the Sentencing Calculus — But Not the Only Factor and Not Always the Main Factor**

(1)  **Introduction**

The second question posed by the court is by far the most challenging in the post-<u>Booker</u> debate. The court asks "what extent and under want circumstances does <u>Booker/Fanfan</u> authorize the district court to impose a sentence that varies from the otherwise applicable guideline sentence?" Docket No. 54 at 2.

The sentencing process has always involved a balancing of conflicting and competing sentencing factors. Each factor cannot be given equal weight in every case. The post-<u>Booker</u> era centers on a parsimony principle and requires the court to choose a sentence "sufficient, but not greater than necessary" to achieve the purposes identified in 18 U.S.C. § 3553(a)(2). The statute directs that achieving those purposes begins with an evaluation of "nature and circumstances of the offense and the history and characteristics of the defendant[.]"

The decision rendering the Guidelines advisory provides the district courts with greatly-increased sentencing discretion. However, attached to this increased sentencing discretion is a greatly-increased responsibility to explain individual sentencing decisions.

> From the start, the Guidelines were intended to advance both the goals of uniformity and proportionality. <u>See</u> U.S.S.G. ch. I, pt. A, intro. cmt. 3. Congress did not seek to impose a regime with absolutely uniform sentences across the country. It sought to eliminate only "unwarranted" disparities, while enabling judges to consider those factors that cannot be tallied in advance, but that may create "warranted" disparities in sentencing.

United States v. Jaber, 362 F. Supp. 2d 365, 373 (D. Mass. 2005). In Ms. Brown's view, this process requires the court to include the Guidelines in its sentencing calculus, but not to slavishly follow them without regard to consideration of those factors in 18 U.S.C. § 3553(a).

Each case will be different, and the balance struck will necessarily reflect those differences. In the end, sentencing decisions will be judged by the appellate review process for reasonableness, and that process will test and provide definition for trial court sentencing decisions.

### (2) The goals of sentencing are necessarily competing, will sometimes conflict, and cannot always be reconciled with precision

Sentencing has always been an individualized process. Associate Justice Anthony M. Kennedy, writing for the Court in Koon v. United States, 518 U.S. 81, 113 (1996), penned these words when the federal Sentencing Guidelines reigned supreme:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

The 18 U.S.C. § 3553(a) factors Congress directed courts to consider when fashioning sentences are often in conflict and sometimes cannot easily be reconciled. Judge Adelman alluded to the conflicting factors inherent in the sentencing process in United States v. Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005).

> [U]nder § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities,

5

> § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history.

Id. at 986.

As Judge Adelman explained, there are cases where the defendant's educational, training, treatment, or medical needs are best served if the offender is allowed to remain in the community. Id. Likewise, earlier community placement may be warranted for a particular offender where restitution is an important component of an individualized sentence. Id.

In the end, it is the role of the sentencing judge to strike a reasoned balance between these competing factors and then provide an explanation for his or her decision that can be reviewed for reasonableness. Again, it is the appellate review process that will test and provide definition for trial court sentencing decisions.

**(3) Judge Cassell's approach to the post-Booker sentencing process improperly discounts the Sixth Amendment concerns of the merits majority**

The court's order at Docket No. 95 asks for discussion of United States v. Wilson, 350 F. Supp. 2d. 910, on reh'g, 355 F. Supp. 2d 365 (D. Utah 2005). Judge Cassell advocates that a post-Booker sentencing court must give "heavy weight" to the Sentencing Guidelines and should exercise discretion to sentence outside the Guidelines "only in unusual cases," and then for "clearly identified and persuasive reasons." Id. at 925.

The danger inherent in the "heavy weight" concept is that it approaches too closely the systems held unconstitutional in Blakely v. Washington and in the merits majority in United States v. Booker. Judge Cassell's proposal addresses the Sixth Amendment problem by hiding it. It makes no sense to acknowledge the Sixth Amendment infirmities of a mandatory sentencing guideline system and then replace it with a sentencing guideline system that is advisory in name only.

### (4) The case for strict adherence to the Sentencing Guidelines post-Booker is overstated

The case for strict adherence to the Sentencing Guidelines post-Booker is overstated. Those endorsing this approach argue that the Sentencing Commission has devoted years of study aimed at promoting uniform sentencing and eliminating sentencing disparity. Ms. Brown respectfully disagrees. Principled criticism of the argument for strict adherence to the Sentencing Guidelines post-Booker should include consideration of the original purpose of the Sentencing Commission; the link between the factors established in § 3553(a) and the Sentencing Guidelines ultimately promulgated; whether the Sentencing Commission has fulfilled its purpose; and the inherent difficult challenges presented in any sentencing process.

Judge Gertner makes several compelling points in her analysis of the role of Sentencing Guidelines post-Booker. United States v. Jaber, 362 F. Supp. 2d at 372-76. First, she notes that the drafters of the Sentencing Guidelines recognized "the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." United States v. Jaber, 362

F. Supp. 2d at 372, quoting U.S.S.G. ch. I, pt. A, intro. cmt. 4(b).  Fairness in individual cases, she argues, means more than rote application of the Guidelines.  Id.

Second, she points out that over the years the Sentencing Commission has made no direct effort to implement the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Indeed, the first Sentencing Commission "noted that choosing among purposes would be 'difficult,' that the selection of purposes was often 'irrelevant,' and that, therefore, if would simply not identify its purposes at all (or would claim that *all* purposes were relevant for all cases)."  Id. at 374 (citation omitted) (emphasis in original).

Third, she points out that the implementing legislation directed the Commission to develop guidelines that "reflect, to the extent practical, advancement in knowledge of human behavior as it relates to the criminal justice process," id. at 374, quoting 28 U.S.C. § 991(b)(2), and to "develop means of measuring the degree to which sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing set forth in section 3553(a)(2)."  However, instead of performing such studies, the Commission simply "took average national sentences for a given offense, and then increased them, without explanation, [and without] scientific study."  Id.  Because the Sentencing Commission was not subject to the Administrative Procedures Act, it could not be compelled to provide an explanation for the particular guidelines it promulgated.  Id.

Fourth, with rare exceptions, Congress has not played an active role in the sentencing formulation process since the inception of the Guidelines.  Id. at 375.

Fifth, public support for rigid adherence to the Sentencing Guidelines is overstated.  "[I]t is not at all clear that the public would agree with mechanistically-derived

Guidelines outcomes, if it had all the information that judges possess, instead of just sound bytes or incendiary headlines." Id. at 375.

Finally, Judge Gertner suggests that the available evidence does not link the decline in the crime rate to increased application of Guideline-driven sentencing. Id.

In sum, Ms. Brown suggests that the argument for strict adherence to Sentencing Guidelines in most cases post-Booker is overstated.

> **(5) When and to what extent a district court should impose a sentence that varies from the otherwise applicable Guideline Sentence will have to be determined on a case-by-case basis because the Guidelines are only one of the factors to be considered at sentencing**

Ms. Brown's answer is that variations from the otherwise applicable Guideline sentence will have to be determined on a case-by-case basis because the Guidelines are only one of the factors to be considered at sentencing.

Sentencing is and always has been an individualized process. Unwarranted disparity in sentencing is to be abhorred. However, warranted disparity that is explained in the record and that is subject to appellate review for reasonableness should be tolerated. Rigid application of the Sentencing Guidelines in the post-Booker era risks Sixth Amendment error and fails to acknowledge the complex realities of the sentencing process. The Sentencing Guidelines are necessarily incomplete and cannot and should not be considered outcome determinative.

> In the final analysis, the SRA sought to eliminate "unjustified disparity" between "similarly situated offenders." It did not call for identical sentences from one end of the country to another. Differences justified by "differences among offenses or offenders" are *warranted* differences. S. Rep. No. 98-225, at 38 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3221-29 ("Sentencing disparities that are not justified by differences among offenses

or offenders are unfair both to offenders and to the public."). Differences in treatment of offenders based on identifiable, sustainable standards, spelled out in decisions, statements of reasons, or transcripts, subject to review, or even testing, are not "unwarranted."

United States v. Jaber, 362 F. Supp. 2d at 376 (emphasis in original).

### C. This Court Should Exercise its Discretion to Vacate Ms. Brown's Sentence, Hold a Further Sentencing Hearing, and Sentence Ms. Brown to a Sentence of Straight Probation

Ms. Brown asks the court to exercise its discretion to vacate her sentence, to hold a further sentencing hearing, and to modify the special conditions of six months of home confinement to a sentence of straight probation.

At sentencing, Ms. Brown moved for a downward departure based on the following grounds: Family Ties and Responsibilities under U.S.S.G. § 5H1.6, Duress under U.S.S.G. § 5K.12, and Post Offense Rehabilitation under U.S.S.G. § 5K2.0. At the initial sentencing hearing held on April 27, 2004, Ms. Brown submitted documentation to support her downward departure requests. She submitted the medical records of her daughter documenting that she had recently been diagnosed with an antonymous thyroid nodule and was scheduled to undergo surgery. [Defendant's Sentencing Memorandum, Attachment E.] She presented records from her employer showing the progress she had made over the five years since the offense conduct. [Defendant's Sentencing Memorandum, Attachments B and C.] She also submitted letters of support from friends and family describing her life at the time of the offense and her life at the time of sentencing. [Notice of Lodging, Docket Nos. 22, 24.] Based on the departures presented, the court was disinclined to consider outside of the Guideline range. In considering the downward departure request, the court made note of the constrictions placed upon his

discretion by not only the Guidelines, but also the Feeney Amendment. [Sentencing Tr., Vol. I, pp. 5-6.]

Pursuant to the holding of <u>Booker</u> and the requirements of 18 U.S.C. § 3553(a) – the court must consider anew whether certain characteristics of the defendant, or of the offense, justify a further sentence reduction.

D.  **In Determining Ms. Brown's Sentence, the Court Should Take into Consideration All the "Characteristics of the Defendant" as Required by 18 U.S.C. § 3553(a)**

In determining whether the sentence should be reduced <u>below the Guideline range</u>, the district court should now weigh the characteristics of the defendant previously precluded or discouraged from consideration by the mandatory operation of the Sentencing Guidelines. These characteristics provide a substantial reason for a further sentence reduction, given the United States Supreme Court decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).

In a post-<u>Booker</u> sentencing, the assessment of Ms. Brown's family responsibilities, her imperfect duress departure, and her post-offense rehabilitation documented by letters to the court, although not enough in the court's view to amount to a downward departure under the system at the time, provide a basis for sentence reduction in determining an appropriate, individualized sentence under § 3553(a). As a result of <u>Booker</u>, sentencing courts must now impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), after considering:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the kinds of sentences available;

  (3) the Guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) Guideline range;

  (4) the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct; and

  (5) the need to provide restitution to any victim of the offense.

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of § 3553(a), and the "factors" to be considered in fulfilling that mandate. The overriding principle and basic mandate of § 3553(a) requires the sentencing court to impose a sentencing "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2):

  (A) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

  (B) deterrence;

  (C) incapacitation ("to protect the public from further crimes"); and

  (D) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." However, it is not just another "factor" to be considered along with the others set forth in § 3553(a) – it is an independent limit on the sentence a court may impose.

In determining the sentence minimally sufficient to comply with the § 3553(a)(2) purposes of sentencing, the court must consider several factors listed in

§ 3553(a). These are (1) "the nature and circumstances of the offense and the history and characteristic of the defendant;" (2) " the kinds of sentence available;" (3) the Guidelines and policy statement issued by the Sentencing Commission, including the (now non-mandatory) Guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. §§ 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor.

During the sentencing hearing, the court recognized that a strong argument could be made that the offense conduct that lead to Ms. Brown's conviction was "isolated in time and subsequent events suggest that Ms. Brown probably has learned her lesson and probably will not re-offend, and so the need to stress deterrence of self and rehabilitation might not be –be necessary." [Sentencing Transcript, Vol. 2, p. 4.] Indeed, it has now been over a year and a half since Ms. Brown's sentencing. During that time period, Ms. Brown has successfully complied with her conditions of supervision. She has not only paid her restitution payments every month in a timely manner as scheduled by the probation office, she has continually paid more than the required amount – even doubling her payments in the last few months. In addition, she has continued to perform well on her job with the Alaska Housing Authority, receiving high praise on her yearly evaluations. [Attachment A, Employment Evaluations.] She also has continued her goal to improve her skills by taking advantage of all the educational opportunities offered to her. [Attachment B, Training Certificates.] Given all the factors presented to the court during the initial sentencing hearing, together with the continued progress Ms. Brown has made over the past year and a half, the special condition of home confinement appears to be

unwarranted and waste of resources. Thus, Ms. Brown respectfully requests that the court vacate her current sentence and impose a sentence of straight probation.

## IV. CONCLUSION

In sum, Ms. Brown answers the court's three questions as follows:

(1) The principles announced in Booker/Fanfan and the earlier Blakely decision apply to sentence in this case.

(2) Sentencing is an individualized process which necessarily requires a balancing of inherently conflicting factors. Post-Booker sentencing in federal court must become more flexible. Sentencing courts now have the added responsibility of weighing all of the § 3553(a) factors, providing a reasoned explanation for the sentences imposed, and allowing the review for reasonableness to test and provide definition to the sentencing process. The arguments for strict adherence to the Sentencing Guidelines, with variances only in the most extraordinary circumstances, are overstated and risk the Sixth Amendment error condemned in Blakely and Booker.

(3) The record in this case suggests a reasonable probability that Ms. Brown's sentence would have been different under an advisory sentencing scheme. This is particularly true given the fact that the court imposed the least restrictive sentence under the then-mandatory Guidelines, coupled with numerous grounds for a downward departure and the comments made by the court concerning the standard of review under the Feeney Amendment.

Ms. Brown's actions in the five years preceding her sentencing, as well as the past year and a half after her sentencing, suggest that a sentence of straight probation is sufficient to satisfy the sentencing goals set forth in § 3553.

For all of these reasons, Ms. Brown respectfully requests that her sentence be vacated, that a further sentencing hearing be conducted, and that a sentence of straight probation be imposed.

DATED this 22nd day of December, 2005.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

M. J. Haden
Staff Attorney

Certification:

I certify that on December 22, 2005, I hand delivered a copy of this document to:

Retta-Rae Randall, Esq.
Assistant U.S. Attorney
222 West 7th Avenue, No. 9, Room 253
Anchorage, AK  99513-7567

Mary Frances Barnes
Probation Officer
222 West 7th Avenue, No. 48, Room 168
Anchorage, AK  99513-7562

Lenora L. Roehling